**The document below is hereby signed.**

**Dated: November 30, 2012.**



_____
**S. Martin Teel, Jr.
U.S. Bankruptcy Judge**

```
              UNITED STATES BANKRUPTCY COURT
               FOR THE DISTRICT OF COLUMBIA
```

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| STEPHEN THOMAS YELVERTON, | ) | Case No. 09-00414 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| STEPHEN THOMAS YELVERTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 12-10011 |
| ALEXANDRA N. SENYI DE NAGY-UNYOM, | ) | |
| | ) | **Not for Publication in** |
| | ) | **West's Bankruptcy Reporter** |
| Defendant. | ) | |

<u>MEMORANDUM DECISION RE MOTION TO VACATE DECISION</u>

On September 24, 2012, the court issued a memorandum decision and related judgment declaring, *inter alia*, that certain obligations owed by Stephen Thomas Yelverton to his former spouse, Alexandra N. Senyi De Nagy-Unyom, are non-dischargeable obligations under either 11 U.S.C. § 523(a)(5) as domestic support obligations or under § 523(a)(15) as having been incurred "in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court

record . . . ." Yelverton has filed a motion under Fed. R. Bankr. P. 9023 and 9024 requesting that the decision be vacated based upon a clear error of law.  The court will deny the motion.

I

In his motion, Yelverton argues that obligations arising under the prenuptial agreement between Yelverton and Senyi do not qualify as § 523(a)(5) or § 523(a)(15) obligations because they were not determined by a domestic relations court and were not based upon the divorcing spouses' respective needs and ability to pay.  Yelverton goes on to argue that the only public policy rationale for treating §§ 523(a)(5) and (a)(15) obligations as non-dischargeable is when such obligations are established based upon the divorcing spouses' respective needs and ability to pay.[1]

Yelverton entered into the prenuptial agreement with Senyi of his own free will, and in doing so, forfeited the right to insist upon support obligations being determined by a domestic relations court and based upon his and Senyi's respective needs

---

[1] In enacting these provisions, Congress elected to make the character of the debt the determinative factor, not the relative needs and resources of the divorcing spouses.  Although a need-based analysis was previously included in the language of § 523(a)(15), the 2005 Congressional amendment to § 523(a)(15) "broaden[ed] the scope of nondischargeable marital debt by abandoning [the] need-driven analysis of the dischargeability of non-support marital debt." *In re Taylor*, 478 B.R. 419, 428 (10th Cir. 2012).  If Congress wanted dischargeability of §§ 523(a)(5) and (15) claims to turn on the debtor's ability to pay, it knew how to incorporate that requirement into the non-dischargeability provisions of §§ 523(a)(5) and (15).

and resources.[2]

Yelverton contends that this court's decision with respect to those obligations is at odds with the public policy rationale for treating §§ 523(a)(5) and (15) obligations as non-dischargeable.  The plain language of §§ 523(a)(5) and 523(a)(15), however, is unambiguous, and there is no basis for this court to resort to policy rationales in disposing of this matter rather than applying the statute, as written.  "It is elementary in the law of statutory construction that, absent ambiguity or unreasonable result, the literal language of a statute controls and resort to legislative history is not only unnecessary but improper."  *Elm City Broadcasting Corp. v. United States*, 235 F.2d 811, 816 (D.C. Cir. 1956); *Eagle-Picher Indus. v. EPA*, 759 F.2d 922 (D.C. Cir. 1985)  ("resort is not to be made to the legislative history when the statute is clear and fidelity to the plain language does not lead to an irrational result." (Citing *U.S. v. Oregon*, 366 U.S. 643 (1961)).

Yelverton complains that the court's declaration of non-

---

[2]  This was addressed in the court's memorandum decision. *See* Mem. Dec. at 24 n. 10 ("The Superior Court found that the prenuptial agreement controlled who was to get alimony.  It noted that 'if the Pre-Nuptial Agreement was not in effect, the Court would consider payment of some income to [Yelverton] by [Senyi] for a certain time.'  Dec. at 16.  Instead, Senyi was entitled to enforce the deal she had obtained in the prenuptial agreement that she, not Yelverton, was to get alimony."); *id.* at 24 ("those obligations are on their face support obligations, and Yelverton has not presented evidence to show they are not support obligations.").

3

dischargeability will result in a windfall to Senyi and impoverishment to Yelverton.  That Senyi enjoys greater advantages than Yelverton under the prenuptial agreement is an imbalance of Yelverton's own making; it does not render the court's finding of non-dischargeability absurd or irrational, or otherwise justify a departure from application of the statute as written.  Congress chose to draft the exceptions of §§ 523(a)(5) and (a)(15) broadly to capture a wide-variety of obligations incurred incident to a marriage and divorce, and Yelverton and Senyi chose to anticipate their respective needs in the event of a dissolution of marriage rather than leaving that determination to a judge.  This is not the case of a statute producing absurd results, but rather, it is a case of a party accepting risks and liabilities of a non-dischargeable nature.

II

Yelverton next contends that the court erred by failing to treat the prenuptial agreement as a business agreement.  The fact that the prenuptial agreement incorporates terms relating to Yelverton's and Senyi's business relationship does not alter the fact that the prenuptial agreement is a binding contract establishing the terms of alimony, support, and property division to govern during the course of the marriage and upon its

dissolution.³ That the business relationship between Yelverton and Senyi is referenced in the agreement, and may have played a role in the manner in which they chose to divide property during the marriage and upon divorce, does not render this a business agreement falling beyond the reach of §§ 523(a)(5) and (a)(15). As discussed at length in the court's prior decision, even if some of the non-dischargeable obligations arising under the prenuptial agreement are not support obligations, "[w]hether Senyi's claims against Yelverton arising under the prenuptial agreement are domestic support obligations or are, instead, in the nature of a property settlement, is a purely academic issue because both categories of obligation are nondischargeable in a chapter 7 case commenced after the effective date of BAPCPA. S*ee* 11 U.S.C. § 523(a)(5) and § (a)(15)." Mem. Dec. at 20-21.

                                III

   An order follows.

                                        [Signed and dated above.]

Copies to:
All counsel of record; Office of United States Trustee.

---

   ³ The agreement is styled as a prenuptial agreement, and it became effective only upon the marriage of Yelverton and Senyi. It contemplates the names of Yelverton and Senyi's future children and the manner of their upbringing, it addresses Yelverton's and Senyi's respective property rights upon marriage, and it dictates the property and financial implications of divorce. There is simply no reading of this agreement that permits the conclusion that it is strictly business in nature.