The document below is hereby signed.

Signed: May 8, 2013



_S. Martin Teel, Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

```
In re                             )
                                  )
STEPHEN THOMAS YELVERTON,         )    Case No. 09-00414
                                  )    (Chapter 7)
          Debtor.                 )
_____ )
                                  )
STEPHEN THOMAS YELVERTON,         )
                                  )
          Plaintiff,              )
                                  )
     v.                           )    Adversary Proceeding No.
                                  )    12-10011
ALEXANDRA N. SENYI DE             )
NAGY-UNYOM,                       )    Not for publication in
                                  )    West's Bankruptcy Reporter
          Defendant.              )
```

<u>MEMORANDUM DECISION AND ORDER RE APPLICATION TO WAIVE APPEAL FEES</u>

On December 17, 2012, the plaintiff, Yelverton, filed an application for waiver of the fee for pursuing an appeal of this court's final judgment, an appeal pending in the district court as *Yelverton v. Senyi de Nagy-Unyom (In re Yelverton)*, Civil Action No. 13-00074-RLW. The application bore the caption of the district court, and the clerk apparently viewed the application as a copy being filed in this court for information purposes only, and never brought the application to the court's attention.

To the extent Yelverton's application sought relief from this court, the application will be denied.

On January 17, 2013, Yelverton filed an identical application to proceed without prepayment of fees or costs in the district court. By an order of April 16, 2013, the district court denied that application and ordered Yelverton to pay the filing fees within 35 days (that is, by May 21, 2013), and that denial was based in part on Yelverton's failure to post security for the appeal. Yelverton has not sought reconsideration of the order of April 16, 2013,[1] but this decision is being issued to assist the district court should Yelverton seek reconsideration.

I

DENIAL BASED ON THE APPEAL BEING FRIVOLOUS

Yelverton seeks a waiver under 28 U.S.C. § 1930(f). The court's power to waive the fee when a debtor otherwise qualifies

---

[1] Yelverton did seek reconsideration of similar orders (that referred to the order of April 16, 2013, in Civil Action No. 13-00074-RLW) in two other appeals, *Yelverton v. Ludwig & Robinson, PLLC (In re Yelverton)*, Civil Action No. 12-01996-RLW, and *Yelverton v. Webster (In re Yelverton)*, Civil Action No. 13-00454-RLW.

for waiver under 28 U.S.C. § 1930(f) is discretionary.[2]  Thus, although the court has the power to waive the filing fee, it is not required to do so.  The court finds that the debtor's appeal presents no issue that has an arguable basis in law and fact, and the court, in the exercise of its discretion, will deny the debtor's motion for waiver of the filing fee.[3]  Yelverton's appeal is frivolous because it disregards the plain and unambiguous language of the controlling statutes regarding dischargeability of the debts at issue.

---

[2] At a minimum, the discretion accorded the court under § 1930(f) permits it, indeed requires it, to deny a waiver when an appellant fails to identify an issue he would pursue on appeal that has an arguable basis in law and fact.  By way of analogy, when a 28 U.S.C. § 1915(a) waiver of the appeal fee is sought, to show that his appeal is taken in good faith and to obtain a waiver, the appellant must identify an issue he would pursue on appeal that has an arguable basis in law and fact. *See Neitzke v. Williams*, 490 U.S. 319, 325, 109 S. Ct. 1827 (1989); *Cortorreal v. United States*, 486 F.3d 742, 743 (2d Cir. 2007); *Sills v. Bureau of Prisons*, 761 F.2d 792, 794 (D.C. Cir. 1985).  It follows that no § 1930(f) waiver should be permitted when the appellant fails to identify an issue he would pursue on appeal that has an arguable basis in law and fact.

[3] Courts are divided regarding whether a bankruptcy court has the power, in addition to its power under § 1930(f), to grant a motion to proceed *in forma pauperis* under 28 U.S.C. § 1915. *See In re Richmond*, 247 Fed. Appx. 831, at *1-2 (7th Cir. 2007). Section 1915(a)(3) of 28 U.S.C. provides that "[a]n appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith."  As discussed in this decision, the court finds that the debtor's appeal does not present an issue that has an arguable basis in law and fact, and the court thus certifies that the appeal is not taken in good faith.  It follows that, even if this court generally has the power to waive fees under 28 U.S.C. § 1915(a), the debtor would not be permitted to proceed with this appeal *in forma pauperis* in accordance with § 1915(a)(3).  See n.2, *supra*.

Yelverton contends in his appeal that because the prenuptial agreement was not ratified, merged into, or incorporated into the decree of divorce, the obligations arising under that agreement are contractual obligations and not domestic support or marital obligations excepted from discharge under 11 U.S.C. §§ 523(a)(5) and 523(a)(15).  The only obligations the court declared to be nondischargeable were set forth in paragraph 1 of the judgment, which recited:

> The $7,000 monthly marital support payments and the $17,000 monthly alimony payments described in the parties' September 29, 2006 prenuptial agreement are determined to be nondischargeable obligations under either 11 U.S.C. § 523(a)(5) or § 523(a)(15).

Yelverton's argument is frivolous.  These obligations are clearly in the nature of domestic support obligations or obligations incurred "in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record . . . ."[4]  Nowhere does the language of §§ 523(a)(5) and 523(a)(15) suggest that those provisions are inapplicable if there is not incorporation or merger into a divorce decree of a prenuptial contract's obligation for marital

---

[4] In the divorce proceedings in the Superior Court, Yelverton challenged the enforceability of the prenuptial agreement, and the Superior Court rejected that challenge.

4

support or alimony.[5]

The prenuptial agreement provided, *inter alia*, that:

    1.  Yelverton was to "provide $7,000 per month to [Senyi] **during the marriage for her support and use**;" and

    2.  "**In the event of termination of the marriage . . . . [Yelverton] agrees to pay alimony of $17,000 per month**, so long as [Senyi] is single, plus child support. This amount may not be lowered by any court in order to protect [Senyi's] interests."

[Emphasis added.] As explained in the court's memorandum decision, and as supported by the plain language of the statute,

---

[5] As this court explained:

> That the agreement itself was not incorporated or merged into the divorce decree does not change the fact that [the obligations at issue in Yelverton's appeal] constitute domestic support obligations and obligations that were incurred by Yelverton in the course of his divorce from his non-debtor spouse, Senyi. *See Paynton v. Paynton*, 914 S.W.2d 63, 65 (Mo. App. E.D. 1996) ("There are three types of maintenance: (1) decretal maintenance ordered by the court; (2) contractual maintenance, created by the parties, but not incorporated into the decree; and (3) separation agreement decretal maintenance, agreed to by the parties and incorporated into the decree. The primary difference between the three is the remedies available for enforcing the judgment.") (internal citation omitted) (quoted in *Lueckenotte v. Lueckenotte*, 2000 WL 817729 (Mo. App. W.D. June 27, 2000) (unpublished).

Mem. Dec. at 16.

the claims were nondischargeable under § 523(a)(5)[6] as domestic support obligations:

- Senyi has made no assignment of her claims;
- the obligations were in the nature of alimony, maintenance, or support (without regard to whether such debt is expressly so designated); and
- were established by (or subject to establishment by) a separation agreement, divorce decree, or an order of a court of record.

Alternatively, these obligations were nondischargeable under

---

[6] Section 523(a)(5) provides that a discharge under § 727 does not discharge any debt "for a domestic support obligation." In turn, as relevant here, 11 U.S.C. 101(14A) defines "domestic support obligation" to mean any debt, regardless of when it accrues, that is--
    (A) owed to or recoverable by--
        (i) a spouse [or] former spouse . . .
    (B) in the nature of alimony, maintenance, or support . . . of such spouse, [or] former spouse . . . without regard to whether such debt is expressly so designated;
    (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of--
        (i) a separation agreement, divorce decree, or property settlement agreement; [or]
        (ii) an order of a court of record . . . ; and
    (D) not assigned to a nongovernmental entity . . . .

§ 523(a)(15)[7] as incurred by Yelverton in the course of his divorce or separation from Senyi, in connection with a separation agreement, or in connection with a divorce decree or other order of a court of record.  Here, the parties' contract clearly and unambiguously reflects that the obligations were intended as marital support and alimony, and Yelverton provided no evidence to the contrary.

II

DENIAL BASED UPON FAILURE TO POST ACCEPTABLE FORM OF SECURITY

Yelverton appears to have no significant assets or income.[8] Regardless of whether Yelverton is currently unable to pay the fees, he stands to be able to exempt $11,200 of whatever proceeds the trustee garners from the disposition of estate assets, 11 U.S.C. § 522(d)(5), and Yelverton ought not be allowed a free

---

[7] Section 523(a)(15) provides, in relevant part, that a discharge under § 727 does not discharge any debt–

> to a spouse [or] former spouse . . .  and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement,  divorce decree or other order of a court of record . . . .

[8] Yelverton scheduled his 1,333 shares in Yelverton Farms, Ltd. as worth $500,000.  But the court has approved a settlement under which the trustee, in exchange for $110,000, is to transfer those shares to Yelverton's siblings and is to release claims against those siblings.  The $110,000 will not be sufficient to fully pay claims in the bankruptcy case.  The order approving the settlement is the subject of another appeal, *Yelverton v. Webster*, Civil Action No. 12-01539-RLW, in which Yelverton *did* pay the appeal fee.

7

ride when he has not posted his exemption rights as security for the appeal. Yelverton originally exempted, under § 522(d)(5), $11,200 of the prospective proceeds of a settlement regarding his claims against his siblings (including claims relating to his shares of stock in a family corporation, Yelverton Farms Ltd., with the settlement resulting in the transfer of those shares to the siblings). The trustee had no objection to that exemption, and this court initially indicated (with respect to a fee waiver request regarding another appeal by Yelverton) that an irrevocable assignment of that exemption, to the extent necessary to secure the appeal fees, would be an acceptable way for Yelverton to post security for the appeal. Despite the court's indication that it would accept this form of security, Yelverton has not posted any of his exemption rights as security for the appeal fees.

Upon further reflection, posting a § 522(d)(5) exemption of the prospective settlement proceeds would not have been an acceptable form of security for permitting *a frivolous appeal* to proceed without payment of the appeal fees:

- the approval of the settlement is still on appeal,
- the trustee has not yet been paid under the settlement,

- Yelverton has repeatedly switched exemptions,[9] and

- it would be administratively burdensome for the clerk to monitor and administer such an odd form of security.

Nevertheless, if the appeal were *not* frivolous, the court would insist, as a condition to allowing the appeal to proceed without payment of the appeal fees, that Yelverton make an irrevocable assignment to the clerk, in an amount equal to the appeal fees, of whatever portion (if any) of the proceeds of estate assets that the trustee would otherwise distribute to Yelverton at the end of the case.

Because the court has determined that the appeal is frivolous, however, and because the court has likewise determined that a posting by Yelverton of his § 522(d)(5) exemption rights would not constitute an acceptable form of security for the fees associated with the filing of a frivolous appeal, it makes no difference that Yelverton has not sought to post his exemption rights as security for the fees associated with this appeal.

---

[9] Yelverton is no longer claiming the proceeds of the settlement agreement to be exempt under § 522(d)(5).  Instead, Yelverton is now claiming an exemption under § 522(d)(5) with respect to the so-called Maxwell production contract.  The trustee, however, has not sold the Maxwell production contract. There have been suggestions in the bankruptcy case that the contract is of dubious value, and given the $11,200 exemption now claimed by Yelverton as to that contract, the trustee may well decide that he should abandon the contract to Yelverton in satisfaction of Yelverton's § 522(d)(5) exemption claim rather than attempting to sell it.

III

It is

    ORDERED that the debtor's motion for a waiver of fees and costs (Dkt. No. 28) is DENIED without prejudice to the debtor's pursuit of a waiver of fees and costs in the district court.  It is further

    ORDERED that the clerk shall transmit a copy of this order to the clerk of the district court.

                                                [Signed and dated above.]

Copies to: All counsel of record.